# In the United States Court of Federal Claims

No. 09-202C
(Filed: July 27, 2010)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MULTI-TRADE ASSOCIATES, INC.,

               *Plaintiff*,

v.

THE UNITED STATES,

               *Defendant*.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

This is an action by Multi-Trade Associates, Inc., ("Multi-Trade" or "plaintiff") for breach of a lease it entered into with the United States Postal Service ("USPS"). Plaintiff contends that it was damaged when USPS, at the conclusion of the lease, failed to make certain repairs and restorations. Pending is defendant's motion for summary judgment. The motion is fully briefed and we deem oral argument unnecessary.   For the reasons set forth below, we grant defendant's motion.

## BACKGROUND[1]

In 1981, USPS issued a public solicitation seeking to lease a building in West Babylon, New York, suitable for eventual service as the West Babylon Branch Post Office.  Plaintiff owned such a building and submitted the winning bid.   In 1982, plaintiff and USPS executed an Agreement to Lease.

---

[1] Defendant supported its motion with Proposed Findings of Uncontroverted Fact, which were based on an extensive appendix of contract documents, deposition excerpts, and plaintiff's responses to interrogatories and requests for admissions.  Plaintiff did not contest the proposed findings or file proposed findings of its own.  It did attach four exhibits, including a proposed lease amendment, to its response.  Defendant notes that the documents were not attached to the complaint or made the subject of proposed findings.  It does not contest their authenticity, however. Hence, we cite them below.

This amounted to a pre-lease contract setting out the building's description and rental terms, including monthly rent.

Subsequently, plaintiff and USPS modified the pre-lease contract. The modification set out the changes to the building that plaintiff was required to make.[2] Plaintiff made the agreed-upon improvements between 1982 and 1985 and was paid $360,000 for them. The improvements included installation of a "lookout gallery,"[3] a platform allowing inspectors to observe the workforce through one-way glass.[4]

After the building modifications were completed, the parties executed an eight-year lease on July 31, 1985. The lease gave USPS four five-year-term renewal options. In order to exercise an option, USPS had to notify plaintiff thirty days prior to the end of the pending lease term.[5]

Paragraph nine of the lease gave Multi-Trade the right to require USPS to restore the premises at the end of the lease:

Prior to the expiration or termination of this lease the Postal Service shall, if required by the Lessor by notice in writing sixty days in advance of such expiration or termination, restore the premises to as good condition as that existing at the time of entering upon the same under this lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Postal Service has no control, excepted.

Defendant's Appendix ("DA") at 61 (Lease).

The original eight-year lease term ended on July 31, 1993. USPS subsequently exercised three of the renewal options, bringing the date for lease termination to July 31, 2008.

---

[2] Defendant's Appendix ("DA") at 24-59 (USPS, Construction Requirements for Leased Postal Facilities, Northeast Region (January 1977)).

[3] DA at 138 (Deposition of Humbert Carreras).

[4] DA at 166 (Declaration of Nicholas Menchise).

[5] DA at 60-82 (USPS Lease of July 31, 1985 ("Lease")).

On April 3, 2008, USPS sent plaintiff a proposed amendment extending the lease on a month-to-month basis beginning August 1, 2008.[6] The proposed amendment was never adopted.

On July 31, 2008, USPS vacated the building.  It is undisputed that the agency did not provide plaintiff with prior notice that it would vacate.[7]  Also on July 31, 2008, William H. Smith inspected the premises on plaintiff's behalf.  Mr. Smith, a certified home inspector, noted damaged and missing tiles at the loading dock, damage to the building's front corner, water damage on ceiling tiles, a rusted water heater that needed replacement, non-functioning boilers manufactured in 1983, and overall, that "[the building] appears to have received average maintenance."[8]

On August 18, 2008, plaintiff sent USPS a letter demanding reimbursement for damage to the building ($50,000), removal of the lookout gallery ($30,000), and various other repairs and removals ($20,000).[9]  After USPS declined to pay, plaintiff filed suit here on April 3, 2009.

The complaint asserts two causes of action.  The first is that USPS breached paragraph nine of the lease by failing to restore the premises to their pre-lease condition, causing plaintiff $50,000 in damages.  The second cause of action is for breach of the implied warranty of good faith and fair dealing. Plaintiff asserts that by leading plaintiff to believe that USPS would opt to extend the lease, plaintiff was lulled into not giving the notice required under the lease which would have triggered the agency's restoration obligation.  For this cause of action, plaintiff seeks an additional $50,000 in damages.

---

[6] Pl. Ex. A (Proposed Lease Amendment).

[7] On that same day, however, the agency sent plaintiff a letter indicating that the "Lease will terminate upon its expiration date, 07/31/2008."  Pl. Ex. B.

[8] DA at 91-92 (Report of Smith Home Inspection).

[9] DA at 83-84 (Letter from Raymond Sussman to Nicholas Menchise).

DISCUSSION

A party is entitled to summary judgment if the pleadings and the parties' submissions show that no genuine issue of material fact exists and if the movant is also entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant's burden is to show an absence of evidence supporting the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant meets its burden, the opposing party prevents summary judgment only by showing the existence of a genuine issue for trial. *See Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). This court views all evidence in the light most favorable to the opposing party and draws all reasonable factual inferences in its favor. *Anderson*, 477 U.S. at 255.

I.      Restoration Obligation

Defendant argues that USPS had no contractual obligation to restore the premises. That obligation only arose, it points out, if plaintiff notified USPS sixty days prior to the end of the lease term. The lease term, as extended, ended on July 31, 2008. Sixty days prior would have been June 1, 2008. Plaintiff admits that it did not notify USPS in writing until August 18, 2008.[10]

Plaintiff counters with a notice argument of its own: "[a]bsent sufficient notice of [USPS's] intent to vacate the premises, USPS cannot rely on the notice requirements of the written lease to defend [its] failure to restore the premises. . . ."[11] It points to no requirement for such notice in the lease, however, and we find none. The lease was for a definite term, and thus USPS did not have to give notice of its intent to vacate. *See generally Camalier & Buckley-Madison, Inc.*, v. *The Madison Hotel, Inc.*, 513 F.2d 407, 419 (D.C. Cir. 1975) (stating that in fixed term leases, "but for the exercise of some option of the lease enabling premature ending . . . no notice to terminate would ever have been needed"). The term of the lease itself serves as an implicit notice of intent to vacate.

---

[10] DA at 112 (Defendant's Request for Admissions); DA at 119 (Plaintiff's Response).

[11] Pl. Resp. Br. 3-4.

Plaintiff argues that the requirement that it give USPS notice should not be enforced because USPS inquired about staying in possession after the lease expired. This inquiry mislead plaintiff into not providing notice by June 1, 2008, it argues. Plaintiff cites USPS's proposal in early April 2008 to begin a month-to-month lease on August 1, 2008. This proposal, however, was not signed by either plaintiff or USPS. Indeed, plaintiff does not claim that it was binding. The agency's cover letter to the proposed amendment also made clear that "submission of this proposed Agreement by the Postal Service to you shall confer no rights nor impose any obligation on either party and shall not be binding unless and until both [parties] shall have executed the Agreement . . . ."[12]

In the absence of a lease extension, plaintiff had to assume that the lease would end on July 31, 2008. Even after receipt of the proposal, it had nearly two months to send a notice requiring restoration, but it did not do so. The agency was not obligated to return the premises to their pre-lease condition.

II.   Lookout Gallery

As to one of the asserted items of damages, removal of the lookout gallery, defendant argues that an independent ground exists for rejecting plaintiff's restoration claims: the lookout gallery was part of the building when the lease began. The restoration provision only applies to additions that were not part of the premises when USPS executed the lease. The record is clear that the gallery was complete prior to execution of the lease.[13] The fact that it was built for the convenience of USPS is immaterial.

Nor does language at the beginning of paragraph nine, relied on by plaintiff, change the result:

The Postal Service shall have the right to make alterations, attach fixtures and erect additions, structures or signs in or upon

---

[12] Pl. Ex. A (Proposed Lease Amendment).

[13] DA at 26, 43, 56 (USPS, Construction Requirements for Leased Postal Facilities, Northeast Region (January 1977)). We note that Humbert Carreras, the owner of Multi-Trade, testified in his deposition: "The United States did not construct anything." DA at 138 (Deposition of Humbert Carreras).

> the premises hereby leased . . . which fixtures, additions or
> structures so placed in, upon or attached to the said premises
> shall be and remain the property of the Postal Service and may
> be removed or otherwise disposed of by the Postal Service.

Defendant's Appendix ("DA") at 61 (Lease). We note that this language gives
USPS the option of removing or disposing of alterations or fixtures. This
language creates no additional affirmative obligation to remove such items.
Moreover, as we have found above, the gallery was not added by USPS, so the
language does not apply.

III.    Plaintiff's Good Faith Argument

Plaintiff argues that there was a breach of the obligation, present in any
contract, that requires the parties to deal with each other in good faith.
Plaintiff contends that USPS breached this obligation when it lulled plaintiff
into the false belief that the agency wished to extend the contract on a month-
to-month basis, thereby nullifying the sixty-day notice provision:

> Plaintiff certainly could not have complied with the notice
> requirements of the lease to cure the damages since USPS
> misled the Plaintiff into agreeing to extend the lease on a month-
> to-month basis. . . . Mr. Menchaise assured the Plaintiff that day
> [July 31], that the notice requirements would not apply and that
> they [USPS] would restore the premises to the pre-lease
> condition. . . . USPS, notwithstanding that the Plaintiff had
> retained counsel, wrote directly to the Plaintiff and simply
> denied all the admissions made by them at the meeting of the
> parties upon USPS vacating the premises.

Pl. Resp. Br. 2-3.

Plaintiff argues, in effect, that the agency should be estopped from
denying its intent to execute an amendment and that, in reliance on the
agency's representation, plaintiff neglected to issue the restoration notice.

There are a number of problems with this contention. The most
fundamental is that there is no factual support for it. Plaintiff did not agree to
the lease extension. Nor is there any proof in the materials furnished by either
party that the agency understood it was waiving the requirement of a notice to
restore. The letter cited in the briefing for this point, the Sussman letter of

August 18, 2008, makes no reference to prior representations by the agency. Nor does the agency's August 27, 2008 letter in response disavow any representations.

Moreover, as we held above, the agency incurred no legal obligation to extend the lease by proposing to go to a month-to-month term. The proposal to extend the lease could not misrepresent the agency's intent because the proposed amendment makes clear that it would not be binding unless executed. Finally, we note that converting the lease to a month-to-month term and permitting either party to terminate on thirty-day's notice would have nullified the sixty-day notice provision. Plaintiff could never give notice at least sixty days prior to the end of the lease term. In sum, defendant did not breach the implied covenant of good faith.

IV.    Remaining Issues

Plaintiff identifies three factual issues as to which it believes there are material disputes. The first is whether USPS provided sufficient notice of its intent to vacate. This issue is immaterial in view of our holding that there was no legal obligation on the part of the agency to give such notice.

The second is whether the construction of the lookout gallery was in accordance with the terms of the lease and, relatedly, whether it was constructed by USPS for its own convenience. As we found above, there is no dispute that lookout gallery was part of the building when the lease began, and at any rate, the issue is immaterial.

The final issue is whether USPS left the premises in "shambles" or restored it to the original condition.[14]   As we found above, plaintiff never triggered the restoration requirement. Thus, the agency did not have to restore the premises, rendering this issue immaterial as well.   In light of our finding that USPS did not have to restore the premises, we need not address defendant's alternative arguments regarding damage to the premises.

---

[14]Pl. Resp. Br. 5.

CONCLUSION

Defendant's motion for summary judgment is granted.  The clerk is directed to dismiss the case and enter judgment accordingly. No costs.


s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge